IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| JANET YELLEN, Secretary of Treasury, in her official capacity, and JOSEPH BIDEN, President of the United States, in his official capacity | ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Introduction**

1. The Plaintiff National Association of Government Employees, Inc., ("NAGE") asks that this Court enjoin the Defendants from cancelling or suspending the operations of the federal government on the ground that the limit on total indebtedness of the United States has been reached under 31 U.S.C. § 3101(b). In its present form 31 U.S.C. § 3101(b), known as the Debt Limit Statute, is in violation of the principle of the separation of powers, as set out in Articles I and II of the Constitution, because it necessarily confers on the Defendant President the unchecked discretion to cancel or curtail the operations of government approved by Congress without the approval of Congress. Plaintiff NAGE therefore seeks an order to declare that the Debt Limit Statute is presently unconstitutional and of no force and further seeks to enjoin Defendants from refusing to borrow to meet the operations of government approved by Congress and the debts and obligations that also must be paid pursuant to the Fourteenth Amendment until such time as 31

1

U.S.C. § 3101(b) is revised to ensure the constitutionally mandated role of Congress in determining what operations of government may be cancelled or curtailed and to bar layoffs or furloughs of any federal employees until 31 U.S.C. § 3101(b) is so revised.

2. While not challenging here in principle the controversial proposition that Congress can limit the indebtedness of the United States, Plaintiff asserts that Congress may not do so without at least setting the order and priority of payments once that limit is reached, instead of leaving it to the President to do so.

3. Plaintiff NAGE on behalf of itself and its members seeks to enjoin Defendant Yellen from complying with the borrowing limit set by 31 U.S.C. § 3101(b) and taking any additional actions beyond the extraordinary measures already taken to suspend investments in NAGE members' Thrift Savings Plan Funds that would result in any lays-offs, furloughs, loss of employment, or any loss of benefits to any of NAGE's members until 31 U.S.C. § 3101(b) is revised by Congress.

**Jurisdiction and Venue**

4. This Court has jurisdiction over this complaint under 28 U.S.C. § 1331, § 2201, and 5 U.S.C. § 702 because this case presents a substantial question of federal law.

5. This Court has the authority to issue a declaratory judgment and to order injunctive relief and other relief that is necessary and proper pursuant to 28 U.S.C. §§ 2201 & 2202 and 5 U.S.C. §§ 705, 706(2).

6. Venue is proper in this district under 28 U.S.C. § 1391(e)(1), as Plaintiff maintains its principal place of business in this judicial district and represents members, federal employees, throughout the United States, including this judicial district.

## Parties

7.  Plaintiff National Association of Government Employees, Inc., is a national labor organization affiliated with the Service Employees International Union. NAGE is incorporated in Delaware with its place of business at 159 Thomas Burgin Parkway, Quincy, MA 02169. It represents bargaining unit employees in U.S. government agencies including, but not limited to, the United States Department of the Army, the United States Department of the Air Force, the United States Department of the Navy, the Defense Commissary Agency, the Army and Air Force Exchange Service, the Defense Logistics Agency, the United States Department of Veterans Affairs, the United States Department of Transportation, the Federal Aviation Administration, the United States Environmental Protection Agency, the United States Department of the Interior, the United States Department of Commerce, and the Federal Mediation and Conciliation Service.

8.  Defendant Janet Yellen is the Secretary of the Treasury of the United States and, in that position, has the responsibility for financing the operations of the federal government.

9.  Defendant Joseph Biden is the President of the United States.

## Facts

10. Plaintiff NAGE is the exclusive bargaining representative of nearly 75,000 federal employees, including approximately 6,000 in Massachusetts.

11. The members of Plaintiff NAGE work in U.S. government agencies including, but not limited to, the United States Department of the Army, the United States Department of the Air Force, the United States Department of the Navy, the Defense Commissary Agency, the Army and Air Force Exchange Service, the Defense Logistics Agency, the United States Department of Veterans Affairs, the United States Department of Transportation, the Federal Aviation Administration, the United States Environmental Protection Agency, the United States Department of the

Interior, the United States Department of Commerce, and the Federal Mediation and Conciliation Service.

12. At various times during periods when Congress has failed to approve a budget that continues full funding of one or more of these federal agencies, there have been layoffs or other loss of employment by members represented by Plaintiff NAGE at one or more of these agencies.

13. Unlike these previous layoffs, members of Plaintiff NAGE are now at immediate and imminent risk of layoff or furlough because shortly, possibly even next month, the limit on total indebtedness of the United States has been reached, the United States will run out of cash to meet the operations of government approved by Congress, and the Secretary of the Treasury will be forced to either prioritize the payments of government debt resulting in loss of benefits, lay-offs and furloughs, or place the government in default by failing to borrow to cover the government's debt pursuant to 31 U.S.C. § 3101(b).

14. Since 1917, Congress has set a limit on the amount of indebtedness that the United States may incur.

15. From time to time since 1917, Congress has routinely raised such indebtedness of the United States without controversy until such limit was reached in 2011.

16. In 2011, Congress came much closer than previously to failing to enact an increase in total indebtedness of the United States. At that time, and since, the Secretary of the Treasury has taken preliminary measures to prioritize paying the principal and interest on government debt and delaying payments on other government expenses that result in NAGE members' loss of benefits, lay-offs, and furloughs.

17. Nonetheless, the limit was raised in 2011 in a timely manner and raised subsequently so that the limit on the total indebtedness of the United States is currently set at $31.4

trillion.

18.     On January 13, 2023, the defendant Secretary told Congress that early June may be the deadline when the Treasury could no longer pay the nation's bills without an increase in statutory borrowing and that she would be suspending reinvestments in retirement and health benefit funds, including the extraordinary measures of suspending new investments in the Thrift Savings Plan's G Fund investments and redeeming and suspending new investments off the Civil Service Retirement and Disability Fund

19.     Nonetheless, despite taking these extraordinary measures, Defendant Yellen has stated that it is a certainty that the United States will soon be unable to pay its bills unless Congress raises the present limit on indebtedness set by 31 U.S.C. § 3101(b). Otherwise, Defendants will have to make decisions that belong exclusively to Congress in exercise of its legislative function.

20.     At that time, the Defendants will be required to take various major actions to determine priorities for spending or whether certain spending should occur at all without any direction by Congress as to exercise of a function that belongs exclusively to Congress.

21.     It is public knowledge, of which this Court can take judicial notice, that the majority party of the House of Representatives has declared that it will refuse to raise the statutory limit already reached unless and until the President guarantees and accepts the reduction in spending and cancellation of various regulations as described in the budget passed by the House along party lines on April 26, 2023.

22.     The President, in turn, has stated that he will not negotiate in this manner in order to raise the level of indebtedness by law.

23.     Unless and until Congress passes legislation that is signed and approved by the President that raises the limit on total indebtedness set by 31 U.S.C. § 3101(b), the Debt Limit

Statute will bar the defendant Secretary from paying in full for the operations of the United States government which will result, *inter alia*, in NAGE members' loss of employment, accrual of leave, and benefits paid into their pensions and retirement plans. Thrift Savings Plan contributions will be discontinued. Some employees may be forced to work unpaid with only the promise that they may be paid if and when the debt limit crisis is resolved. Specific statutes that prohibit certain outside activities, require prior approval, or prohibit outside employment altogether during a furlough will leave NAGE members with limited means of supporting themselves.

24. In addition to injury already suffered by members described above, and further injury they face, Plaintiff NAGE as an institution will suffer further certain and imminent reduction of its income as members who are furloughed and unable to pay dues to the union.

25. The Debt Limit Statute has placed the President in an impossible position, without legislative permission or constitutional authority as to how to proceed. Under Article II of the Constitution, the President is obligated to execute all the laws, without exception, and may not be placed by Congress in a position where the President has to determine what laws are of continuing force and require payment, once the limit on total indebtedness is reached.

26. The Fourteenth Amendment requires the President to meet obligations to the holders of federal debt. To do so, he must either borrow or find the necessary funds to do so from cancelling, suspending, or refusing to carry out spending already approved by Congress.

27. The Debt Limit Statute is unconstitutional because it puts the President in a quandary to exercise discretion to continue borrowing to pay for the programs which Congress has heretofore duly authorized and for which Congress has appropriated funds or to stop borrowing and to determine which of these programs the President, and not the Congress, will suspend, curtail, or cancel altogether.

28. In the case of the Anti-Deficiency Act, which is applicable in the absence of a duly enacted budget, yet to be determined, the President has limited authority to continue essential operations until the Congress has exercised its constitutional function of approving a budget and provides appropriate guidance to the President as to how to proceed. In complying with the Anti-Deficiency Act, the President does not have authority to suspend or cancel any laws or any programs that are, in fact, funded by Congress. By contrast, the Debt Limit Statute has a retroactive effect and requires a reduction of operations of government approved by Congress, with no legislative direction as to which obligations to cancel.

29. Plaintiff NAGE, accordingly, has standing to bring this action for prospective injunctive relief, as it is the exclusive bargaining representative of 75,000 federal employees and seeks to protect all its members from additional extraordinary measures as well as major spending related actions that will necessarily be taken without approval of Congress and that result in layoffs, furloughs, requirements for unpaid work, and loss of funding of the pensions and retirement plans of its members.

### Claims

#### Count I: Violation of Separation of Powers and Presentment Clause

30. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

31. Article I of the Constitution vests the federal government's spending power exclusively in Congress. *See* U.S. Const. art. I, § 8, cl. 1. Nothing in the Constitution or any judicial decision interpreting the Constitution allows Congress to leave unchecked discretion to the President to exercise the spending power vested in the legislative branch by canceling, suspending, or refusing to carry out spending already approved by Congress. Such spending power resides solely

with Congress. Once such spending power is exercised by Congress and approved by the President under the Presentment Clause of Article I, section 7, it may not be further altered or revised by the President.

32. The Fourteenth Amendment prohibits any person from questioning the validity of the public debt and requires the President to first meet obligations to the holders of federal debt through borrowing or by finding the necessary funds from cancelling, suspending, or refusing to carry out spending already approved by Congress. Under the facts set forth above, and in violation of the separation of powers of Articles I and II, the Debt Limit Statute necessarily confers upon the Defendant President the unlawful discretion to cancel, suspend, or refuse to carry out spending approved by Congress, without the consent or approval of Congress as to how the President may do so, in order to pay the bondholders.

33. Because the Debt Limit Statute necessarily delegates the revision of such spending decisions to the President in order to meet its terms, and the members of the Plaintiff NAGE face continuing and imminent injury from such unlawful exercise of power, this Court should declare that 31 U.S.C. § 3101(b) in its current form is unconstitutional, unless and until the priorities for continued spending by the President are established by Congress once the debt limit is reached, and in the interim leave the defendant Secretary free to continue borrowing until there is a revision of 31 U.S.C. § 3101(b) to prevent the President from usurping the prerogatives of Congress.

34. Unless and until the Debt Limit Statute is amended or revised to allow Congress to determine the priority of payments among specific programs once the limit on indebtedness is reached, the Debt Limit Statute is illegal and unenforceable as a whole, as the constitutional defect in the law is not severable in its present form.

35. Unless and until the Debt Limit Statute is amended or revised to allow Congress to

determine the priority of payments among specific programs once the limit is reached, members of Plaintiff NAGE will suffer irreparable injury from layoffs, furloughs, and loss of employment that are taken without any legitimate authority by the President. While in the absence of a budget, the President may have authority under the Anti-Deficiency Act to extend forward the payment for essential services with cash on hand, or even with borrowing in the absence of a bar, the President has no such authority to do so when there is no cash on hand, and no authority to increase borrowing, and may not do so by refusing to execute other laws that Congress enacted and that the President has a constitutional obligation to continue.

36. Preliminary and permanent relief until 31 U.S.C. § 3101(b) can be properly revised is also in the public interest, and the balance of harms favors injunctive relief as well. Defendant Yellen has stated that the United States will suffer irreparable harm from the injury to its public credit and financial injury to all its citizens.

## Count II: Violation of Fifth Amendment

37. Plaintiff repeats and realleges each and every allegation contained in the forgoing paragraphs as if fully set forth herein.

38. Under the facts set forth above, and in violation of the principles of equal protection and due process as incorporated into the Fifth Amendment of the Constitution, Congress has no scheme or set of classifications to determine or control which persons, corporations, or associations will or will not forfeit or lose amounts or suffer a taking of property and contractual rights due to them under 31 U.S.C. § 3101(b), or when the limit on the total indebtedness of the United States is reached, and the taking of such property or contractual rights or infliction of financial loss without the sanction of any law or consent of Congress deprives the Plaintiff NAGE of its right to equal protection.

WHEREFORE Plaintiff prays this Court to:

A. Declare that, in order to meet payments to holders of the public debt of the United States, once the limit on total indebtedness is reached, the Debt Limit Statute both requires and unlawfully confers on the defendant President and defendant Secretary the unlawful discretion to cancel, suspend, or refuse to carry out spending decisions approved by Congress, without direction by Congress, in violation of the principle of the separation of powers as set forth in Articles I and II of the Constitution

B. Enjoin the defendant Secretary under the inherent equity jurisdiction of this Court from limiting the borrowing of the United States pursuant to the Debt Limit Statute to the extent that it requires the defendant President and defendant Secretary to make decisions that exclusively belong to Congress and violate the separation of powers of the Constitution.

C. Grant such other relief as may be appropriate to bar the defendant Secretary and President from involving or relying upon the Debt Limit Statute to de-fund any part of the operations of the federal government approved by Congress unless and until Congress specifically directs.

D. Grant such and other further relief as the Court deems just and proper.

Dated: May 8, 2023                                  Respectfully submitted,

NATIONAL ASSOCIATION OF
GOVERNMENT EMPLOYEES, INC.,

By its attorneys,

*/s/ Shannon Liss-Riordan*
Shannon Liss-Riordan, BBO #640716
Matthew P. Carrieri BBO #705192
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com, mcarrieri@llrlaw.com

Sarah E. Suszczyk
*(pro hac vice application forthcoming)*
General Counsel
NAGE/IBPO/IAEP/IBCO
159 Burgin Parkway
Quincy, Massachusetts 02169
(617) 376-7239
ssuszczyk@nage.org

Thomas H. Geoghegan
*(pro hac vice application forthcoming)*
Michael Persoon
*(pro hac vice application forthcoming)*
William Bloom
*(pro hac vice application forthcoming)*
Despres, Schwartz & Geoghegan, Ltd.
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511
tgeoghegan@dsgchicago.com

Patrick V. Dahlstrom
*(pro hac vice application forthcoming)*
Pomerantz LLP
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
(312) 377-1181
pdahlstrom@pomlaw.com