# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

NATIONAL ASSOCIATION OF
GOVERNMENT EMPLOYEES,

*Plaintiff,*

v.

JANET YELLEN, Secretary of the Treasury,
and JOSEPH R. BIDEN, JR., President of the
United States,

*Defendants.*

Civil Action No: 1:23-cv-11001-RGS

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

Defendants Joseph R. Biden, Jr. and Janet Yellen, by and through counsel, hereby move to
dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)
of the Federal Rules of Civil Procedure.  For the reasons more fully set forth in the accompanying
Memorandum of Law, this Court lacks jurisdiction to review Plaintiff's claims because Plaintiff's
claims are moot and Plaintiff lacks standing.  For these reasons, this case should be dismissed.

Dated: July 24, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

BRAD P. ROSENBERG
Special Counsel

DIANE KELLEHER
Assistant Branch Director

*/s/ Alexander N. Ely*
ALEXANDER N. ELY
ZACHARY A. AVALLONE
Trial Attorneys

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Washington, DC 20005
Tel: (202) 993-5177; Fax: (202) 616-8470
alexander.n.ely@usdoj.gov
Zachary.A.Avallone@usdoj.gov

*Counsel for Defendants*

## REQUEST FOR ORAL ARGUMENT

Per Local Rule 7.1(d), to the extent that oral argument may assist the court in the resolution of the issues contained in this motion, Defendants request oral argument at a date and time at which the parties may be heard.

/s/ *Alexander N. Ely*
Alexander N. Ely

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, <br><br> *Plaintiff,* <br><br> v. <br><br> JANET YELLEN, Secretary of the Treasury, and JOSEPH R. BIDEN, JR., President of the United States, <br><br> *Defendants.* | Civil Action No: 1:23-cv-11001-RGS |

**DEFENDANTS' MEMORANDUM OF LAW IN IN SUPPORT OF THEIR**
**MOTION TO DISMISS FOR LACK OF JURISDICTION**

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

STANDARD OF REVIEW ............................................................................................ 3

ARGUMENT ................................................................................................................ 3

I.      THIS COURT LACKS JURISDICTION TO ADJUDICATE PLAINTIFF'S
CLAIMS. ........................................................................................................... 3

      A.    Plaintiff's Claims Are Moot Insofar as They Are Predicated On Injuries Its
Members Allegedly Suffered at the Commencement of the Action, Before
The Debt Limit Resolution. ............................................................................. 4

      B.    Plaintiff's Injuries Are Too Speculative to Establish Standing to Challenge
the Debt Limit Statute in 2025. ...................................................................... 7

CONCLUSION ............................................................................................................ 11

## INTRODUCTION

Plaintiff National Association of Government Employees ("NAGE" or "Plaintiff") brought this action seeking declaratory and injunctive relief regarding the Debt Limit Statute on May 8, 2023, based on its fear that Congress would not raise the debt limit. That fear never materialized. Instead, on June 3, 2023, President Biden signed the Fiscal Responsibility Act of 2023[1] into law, suspending the United States' debt limit until January of 2025. While NAGE has withdrawn its request for emergency injunctive relief, it has now amended its complaint and seeks a declaratory judgment from this Court that the Debt Limit Statute violates Separation of Powers principles and the Presentment Clause because it impermissibly delegates legislative power to the President.

This Court should dismiss this lawsuit for lack of jurisdiction. *First*, because Plaintiff's allegations of injury that pre-date the debt limit agreement are now moot, the Amended Complaint's continued effort to rely on the predicament in which NAGE's members allegedly found themselves in May of 2023 should be rejected on mootness grounds. *Second,* to the extent Plaintiff's Amended Complaint alleges prospective harms from a potential failure of Congress to raise the debt limit in 2025, Plaintiff lacks standing to do so because such claims of injury are wholly speculative, as they depend on a future chain of events that may never occur—as prior courts have found in challenges to the Debt Limit Statute. The agreement reached by the political branches in May and June only reinforces the speculative nature of Plaintiff's alleged injuries from a potential default in 2025.

Plaintiff's effort to manufacture a justiciable Article III case or controversy fails, and this Court should dismiss this lawsuit for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

---

[1] Pub. L. 118-5.

**BACKGROUND**

The original complaint in this case, *see* ECF No. 1, was filed on May 8, 2023, prior to the agreement reached to suspend the federal debt limit in 31 U.S.C. § 3101(b) ("the Debt Limit Statute") and therefore prior to any default by the United States on its obligations. Eleven days after filing its initial pleading, Plaintiff moved for an Emergency Preliminary Injunction on May 19, 2023. At a scheduling conference held on May 23, 2023, Defendants were ordered to respond to the Preliminary Injunction Motion by May 30, 2023.

On May 27, 2023, both the President and House Speaker Kevin McCarthy separately announced that they had reached an agreement to resolve the debt limit impasse. The Court then granted Defendants' motion to stay briefing and to vacate the previously scheduled hearing on the Preliminary Injunction Motion "[i]n deference to the efforts of the executive and legislative branches to resolve the current impasse over the debt ceiling statute." ECF No. 31 (May 29, 2023, Minute Order vacating hearing); *see also* ECF No. 32 (May 29, 2023, Minute Order staying briefing). Both the House and Senate subsequently passed legislation to suspend the debt limit, and the President signed the legislation into law on June 3, 2023. On June 20, 2023, NAGE withdrew its Motion for a Preliminary Injunction and filed an Amended Complaint, *see* ECF No. 40 ("Am. Compl."), seeking declaratory relief against the Debt Limit Statute. Plaintiff's legal theory, unchanged from the original complaint, is that the Debt Limit Statute violates Separation of Powers principles and the Presentment Clause.[2]

The United States' Attorney's Office was served with a copy of the Original Complaint on May 25, and Defendants hereby move to dismiss the Amended Complaint for lack of jurisdiction. *See*

---

[2] Plaintiff does not rely on the Public Debt Clause of the Fourteenth Amendment as a basis for its challenge to the Debt Limit Statute.

Fed. R. Civ. P. 12(a)(2); 15(a)(3); 12(b)(1).

STANDARD OF REVIEW

"Subject matter jurisdiction refers to a court's power, whether constitutional or statutory, to adjudicate a case." *United States v. George*, 676 F.3d 249, 259 (1st Cir. 2012). "The party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). Questions of subject matter jurisdiction must be considered before merits questions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt."); *Ex parte McCardle,* 7 Wall. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). As the First Circuit has observed, Rule 12(b)(1) "is a large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction" including "those grounded in considerations of ripeness, mootness, sovereign immunity, and the existence of federal question jurisdiction." *Valentin v. Bella Vista Hospital*, 254 F.3d 358, 362–363 (1st Cir. 2001).

ARGUMENT

**I.   THIS COURT LACKS JURISDICTION TO ADJUDICATE PLAINTIFF'S CLAIMS.**

To establish Article III standing, a plaintiff must show "a personal stake in the outcome of the controversy [so] as to warrant his invocation of federal-court jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (quotations omitted); *see also Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) ("To have standing, a litigant must seek relief for an injury that affects him in a personal and individual way," and "must possess a direct stake in the outcome of the case." (quotations omitted)). The plaintiff must demonstrate that it has suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; that injury must also be fairly traceable to the

3

challenged conduct and likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Analysis of these requirements, which reflect fundamental separation-of-powers concerns, must be "especially rigorous" when federal courts are asked to conduct constitutional review of the actions of co-equal branches of government. *Raines v. Byrd*, 521 U.S. 811, 819–820 (1997); *see also Ariz. Christian School Tuition Org. v. Winn*, 563 U.S. 125, 146 (2011) ("Making the Article III standing inquiry all the more necessary are the significant implications of constitutional litigation, which can result in rules of wide applicability that are far beyond Congress' power to change."); *Hollingsworth*, 570 U.S. at 704-705 ("In light of this overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of [an] important dispute and to settle it for the sake of convenience and efficiency." (quotation marks omitted)).

A.     **Plaintiff's Claims Are Moot Insofar as They Are Predicated On Injuries Its Members Allegedly Suffered at the Commencement of the Action, Before The Debt Limit Resolution.**

A federal court may not "decide the merits of a legal question not posed in an Article III case or controversy." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'Ship*, 513 U.S. 18, 21 (1994). There is "no case or controversy, and a suit becomes moot, 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). "Even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights not have a more-than-speculative chance of affecting them in the future." *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011) (quoting *Clarke v. United States*, 915 F.2d 699, 700-01 (D.C. Cir. 1990) (en banc)). *See also Steir v. Girl Scouts of the USA*, 383 F.3d 7, 15 (1st Cir. 2004) (Stearns, J., by designation) (noting

the Supreme Court's "repeated statements that the doctrine of mootness can be described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'") (quoting *Becker v. Federal Election Commission*, 230 F.3d 381, 387 n. 3 (1st Cir. 2000)).

NAGE alleges in its Amended Complaint that at the time of its original pleading, "the country faced a substantial risk of a catastrophic default" and "the standing of Plaintiff to bring this action on behalf of its members must be determined as of that date." Am. Compl. ¶ 3; *see also id.* ¶ 7 (alleging "pending harm to Plaintiff's members at the time of filing"). But any suggestion of injury from those factual allegations is moot: the alleged harms to its members in the event of a default in June of 2023 did not come to pass, as Congress suspended the debt limit pursuant to a bipartisan agreement. Even assuming that Plaintiff's suggestions of immediate injury at the time of filing were sufficient to confer standing, no default occurred, and as with every prior debt limit impasse, the political branches reached an agreement to address the debt limit.[3] Whether or not plaintiff had standing at the time the suit was filed, the case is now moot.

Plaintiff argues that a similar debt limit impasse might occur in 2025 if Congress fails to raise the debt limit. But Plaintiff cannot escape mootness by marrying moot claims of injury with hypothetical future claims of injury and hoping that the whole is greater than the sum of the speculative parts. *See* Am. Compl. ¶ 7 (claiming injury "because of the pending harm to Plaintiff's members at the time of filing and because such harm is certain to occur again under existing law as soon as the Debt Ceiling Statute goes back into effect"). As the First Circuit has observed, "[j]ust as

---

[3] In its original complaint, Plaintiff conceded that every prior dispute between the political branches over the debt limit had ended with an agreement to address the debt limit. *See* ECF No. 1, Orig. Compl. ¶ 15 ("From time to time since 1917, Congress has routinely raised such indebtedness of the United States without controversy until such limit was reached in 2011."); *id.* ¶ 17 ("the limit was raised in 2011 in a timely manner and raised subsequently so that the limit on the total indebtedness of the United States is currently set at $31.4 trillion").

standing cannot rest on a conjectural or hypothetical harm, avoiding mootness cannot rest on speculation about some future potential event," *Harris v. Univ. of Massachusetts Lowell*, 43 F.4th 187, 195 (1st Cir. 2022) (cleaned up). *Cf. Am. C.L. Union of Massachusetts v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 52–53 (1st Cir. 2013) ("[i]f events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case.").

The fact that Plaintiff's claims in the original complaint became moot through the passage of legislation is of no moment. "Through the passage of legislation which governs the lawsuit, Congress can effectively moot a controversy notwithstanding its pendency before the courts." *Friends of the Earth, Inc. v. Weinberger*, 562 F. Supp. 265, 270 (D.D.C. 1983). This occurs where congressional action "significantly alters the posture of [a] case." *U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms v. Galioto*, 477 U.S. 556, 559 (1986); *see also Vermont v. Goldschmidt*, 638 F.2d 482, 485 (2d Cir. 1980) (Congressional enactment of statutory formula for disbursement of unobligated funds mooted state's pre-existing lawsuit regarding those funds); *Cf. New Eng. Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 18 (1st Cir. 2002) (finding a challenge to a permitting scheme moot because the scheme was effectively repealed); *Town of Portsmouth, R.I. v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016) ("we generally consider the law as it exists at the time of our review, not as it might speculatively exist in the future.")

Nor does it matter that Plaintiff has withdrawn its request for injunctive relief, *see* ECF No. 39, and instead is seeking only declaratory relief. The text of the Declaratory Judgment Act, 28 U.S.C. § 2201, requires an "actual controversy," and so "a declaratory judgment cannot be given, if a matter has become moot." Mary Kay Kane, 10B *Fed. Practice & Procedure* § 2757 (4th ed. Apr. 2020 update); *see also Green v. Mansour*, 474 U.S. 64, 74 (1985) (where any possible violation of federal law ended when relevant federal statute was amended, that mooted both the injunctive and declaratory relief claims; a "declaratory judgment that respondent violated federal law in the past" cannot "stand on its own feet as an appropriate exercise of federal jurisdiction"). Indeed, "[f]or declaratory relief to withstand a

mootness challenge, the facts alleged must 'show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Am. C.L. Union of Massachusetts v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 53–54 (1st Cir. 2013) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)).  No such controversy exists here, and all of Plaintiff's claims regarding a potential default by the government in June of 2023 are therefore moot.

**B.     Plaintiff's Injuries Are Too Speculative to Establish Standing to Challenge the Debt Limit Statute in 2025.**

Plaintiff's efforts to allege future injury from the Debt Limit Statute—suspended until at least January of 2025—fare no better, as Plaintiff lacks standing to support such a challenge.  To establish Article III standing, a plaintiff must show "a personal stake in the outcome of the controversy [so] as to warrant his invocation of federal-court jurisdiction."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (quotations omitted); *see also Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) ("To have standing, a litigant must seek relief for an injury that affects him in a personal and individual way," and "must possess a direct stake in the outcome of the case." (quotations omitted)).  The litigant must demonstrate that it has suffered an "injury in fact" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; that injury must also be fairly traceable to the challenged conduct and likely to be redressed by a favorable judicial decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Even prior to the latest debt limit resolution, Plaintiff's Complaint did not appear to allege any present injury from the then-ongoing negotiations regarding the debt limit; instead, Plaintiff's injury seemed to flow from the *future* expectation that the debt limit would not be raised or suspended.  But as the Supreme Court has "repeatedly reiterated," a "'threatened injury must be *certainly impending* to constitute injury in fact,'" and "'allegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  Subsequent events have confirmed the implausibility of Plaintiff's feared injury.  The political branches

reached an agreement with respect to the debt limit, as they have every time the issue has arisen in the Nation's history.

Plaintiff's alleged injury is all the more attenuated now because the debt limit has been suspended until January of 2025. It is not enough, as Plaintiff speculates, that its purported injury "*will be imminent or actual* by the time this litigation takes an ordinary period to resolve," Am. Compl. ¶ 6 (emphasis added), or that NAGE's members allegedly "face certain and irreparable harm as of January 1, 2025." *Id.* ¶ 44. Rather, the injury must be real and imminent. *See Steir*, 383 F.3d at 14–15 (to satisfy the injury-in-fact requirement, "a plaintiff must demonstrate that she 'has sustained or is immediately in danger of sustaining some direct injury' . . . [that] must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *Am. C.L. Union of Massachusetts v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 53–54 (1st Cir. 2013) (no jurisdiction where "[t]he controversy here is at this point neither immediate nor real."). *Cf. Ctr. for L. & Educ. v. Dep't of Educ.,* 396 F.3d 1152, 1161 (D.C. Cir. 2005) ("Indeed, were all purely speculative 'increased risks' deemed injurious, the entire requirement of 'actual or imminent injury' would be rendered moot, because all hypothesized, non-imminent 'injuries' could be dressed up as 'increased risk of future injury.'").

In prior litigation challenging the Debt Limit Statute, courts have rejected standing theories on similar grounds. In *Williams v. Lew*, an individual holder of Treasury securities sued to strike down the Debt Limit Statute on a theory that if the United States were to ever default on its debt, his holdings would suffer a diminution in value. *See Williams v. Lew*, 77 F. Supp. 3d 129 (D.D.C. 2015) (*Williams I*), *affirmed in Williams v. Lew*, 19 F.3d 466 (D.C. Cir. 2016) (*Williams II*). As the DC Circuit explained on appeal in that litigation, "any current harm to Williams's investments is speculative, and he fails to allege future harms that are certainly impending." *Williams II*, 819 F.3d at 474. Furthermore, in *Williams*, the Debt Limit Statute had been suspended at the time that the plaintiff filed suit. *See Williams*

*II*, 819 F.3d at 474 ("Because Congress has suspended the Debt Limit Statute, Williams must rely on rote conjecture that another debt limit impasse will occur once the suspension ends."). When the district court rendered its decision on January 6, 2015, the court noted that "[t]he debt limit is currently suspended, and therefore not in effect, through March 15, 2015." *Williams I*, 77 F. Supp. 3d at 131. The court found this factor relevant in deciding that the Plaintiff's alleged injury in that case required that "several speculative contingencies must occur before plaintiff is harmed by the debt ceiling statute." *Id.* at 133. *See also id.* ("First, the debt limit itself must be reached, but as plaintiff acknowledges, the statute is currently suspended until March 2015."). Here, any potential injury is even further down the road than the three months at issue in *Williams I*, as the debt limit is suspended until January 2025—seventeen months from now.

Any possible political dispute over the debt limit in 2025 is, at the present, far too uncertain to have this Court resolve Plaintiff's claims regarding the potential delay in paychecks for federal workers or the temporary suspension of matching contributions to their retirement plans in the event of a future debt limit impasse. On that basis as well, this lawsuit should be dismissed.

Plaintiff cannot salvage its claim by purporting to allege harms already experienced from Secretary Yellen's declaration of a debt issuance suspension period (part of the extraordinary measures that were in place from January 19, 2023, until the President signed the debt limit legislation) pursuant to 5 U.S.C. § 8348. *See* Am. Compl. ¶ 4 (alleging that at the time of its initial filing NAGE "members had already suffered concrete, individual monetary injury from the extraordinary measures"). In relevant part, that statute provides that "the Secretary of the Treasury may suspend additional investment of amounts in the" Civil Service Retirement and Disability Fund (CSRDF) "if such additional investment could not be made without causing the public debt of the United States to exceed the public debt limit." *Id.* § 8348(j)(1). But the statute by its own terms requires that the Fund be made whole. It provides that "[u]pon expiration of the debt issuance suspension period, the

Secretary of the Treasury shall immediately issue to the Fund obligations" that "bear such interest rates and maturity dates as are necessary to ensure that, after such obligations are issued, the holdings of the Fund will replicate to the maximum extent practicable the obligations that would then be held by the Fund if the suspension of investment . . . had not occurred." 5 U.S.C. § 8348(j)(3). Plaintiff similarly relies on the suspension of new investments in the Thrift Savings Plan (TSP) "G Fund." But substantially identical statutory provisions require the Secretary to make TSP plan holders whole upon expiration of the debt issuance suspension period. *See* 5 U.S.C. § 8438 (g)(1)-(4). Because these reimbursements payments are guaranteed by statute—and because winning or losing this lawsuit would not affect Plaintiff or its members—Plaintiff lacks standing to challenge the Debt Limit Statute on that basis. *See Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1622 (2020) (beneficiaries to ERISA defined-benefit plan lacked standing to sue over alleged plan mismanagement because "[t]hey have received all of their vested pension benefits so far, and they are legally entitled to receive the same monthly payments for the rest of their lives" and "[w]inning or losing this suit would not change the plaintiffs' monthly pension benefits.").[4]

---

[4] In the Amended Complaint, Plaintiff alludes to purported losses in the retirement accounts suffered by its members during the most recent debt issuance suspension period, while conceding that "the current amount of Plaintiffs' uninvested principal and losses in interest has not been reported." Compl. ¶ 4. As the First Circuit has made clear, however, the same facial plausibility standards that govern motions to dismiss under Rule 12(b)(6) apply to unsupported factual allegations in support of standing. *See Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016) ("In the interest of clarity, we make explicit today what our cases have implied and what the near-uniform precedent in other circuits has established: at the pleading stage, the plaintiff bears the burden of establishing sufficient factual matter to plausibly demonstrate his standing to bring the action. Neither conclusory assertions nor unfounded speculation can supply the necessary heft."). Aside from being wholly conclusory and insufficient for Rule 12 pleading standards, if Plaintiff's members had not been made whole following the suspension period, such facts—even if well-pleaded—would not be sufficient to establish future injury to seek declaratory relief against the Debt Limit Statute because such prospective relief would do nothing to redress that alleged injury. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement.")

For these reasons, Plaintiff lacks standing and this Court lacks Article III jurisdiction.[5]

## CONCLUSION

For the reasons discussed above, this Court lacks subject matter jurisdiction over Plaintiff's claims and should dismiss accordingly.

Dated: July 24, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

BRAD P. ROSENBERG
Special Counsel

DIANE KELLEHER
Assistant Branch Director

/s/ Alexander N. Ely
ALEXANDER N. ELY
ZACHARY AVALLONE
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Washington, DC 20005
Tel: (202) 993-5177; Fax: (202) 616-8470
Alexander.N.Ely@usdoj.gov

---

[5] This Court would also lack jurisdiction under the Civil Service Reform Act (CSRA) and the Federal Service Labor-Management Relations Statute (FSLMRS). As a federal union, plaintiff must pursue its claims through the administrative processes of the FSLMRS with judicial review, if necessary, in a court of appeals—not in district court. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 759 (D.C. Cir. 2019); *Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633, 638 (D.C. Cir. 2013). And even if plaintiff purports to bring claims on behalf of individual members and contends that it would not be required to pursue them through the framework established under the FSLMRS, those claims would also not be justiciable under the CSRA, which requires individual employees to exhaust their administrative remedies before bringing suit in district court. *See Irizarry v. United States*, 427 F.3d 76, 77 (1st Cir. 2005) (dismissing claims when a plaintiff was "required, but failed, to exhaust [its] administrative remedies" available under the CSRA). "Federal-sector employment claims typically . . . run[] through the CSRA, which constitutes 'a comprehensive system for reviewing personnel action[s] taken against federal employees,'" including "any actions undertaken in contravention of an employee's constitutional rights." *Gonzalez v. Velez*, 864 F.3d 45, 51 (1st Cir. 2017) (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)). The Court, however, need not reach these issues because this case is moot and Plaintiff lacks standing to seek prospective relief.

Zachary.A.Avallone@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this document was served by electronic filing on July 24, 2023, on counsel of record for Plaintiff.

/s/ *Alexander N. Ely*
Alexander N. Ely

*Counsel for Defendants*