IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL ASSOCIATION OF GOVERNMENT EMPLOYEES, INC., <br><br> Plaintiff, <br><br> v. <br><br> JANET YELLEN, Secretary of Treasury, in her official capacity, and JOSEPH BIDEN, President of the United States, in his official capacity <br><br> Defendant. | Civil Action No.: 1:23-cv-11001-RGS |

**MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION**

**INTRODUCTION**

This Court has continuing jurisdiction of this challenge to 31 § U.S.C. 3101(b) (the "Debt Ceiling Statute"). In their Motion to Dismiss for Lack of Jurisdiction, Defendants Janet Yellen and Joseph Biden do not challenge the original associational standing of Plaintiff National Association of Government Employees ("NAGE") at the time this lawsuit was filed on May 8, 2023, and that challenge is not now moot, even if the Debt Ceiling Statute is suspended temporarily until January 2, 2025 under Public Law ("P.L.") 118-5 § 401(a). Under such a suspension, Plaintiff's challenge fits within two express exceptions for mootness. First, a case is not moot when Defendants have voluntarily ceased to enforce a law like 31 U.S.C. § 3101(b) temporarily but are free to resume doing so. *See West Virginia v. EPA,* 142 S. Ct. 2587, 2607 (2022) ("'[V]oluntary cessation does not moot a case' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' … Here the Government 'nowhere suggests that if this litigation is

1

resolved in its favor it will not' reimpose emissions limits predicated on generation shifting[.]") (citing *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 719 (2007)). In this case, Defendants are not just "free" to resume enforcement of the Debt Ceiling Statute but are required to do so come January 2, 2025. Even if Defendants are not required to do so, they bear a "heavy burden" to prove it is "absolutely certain" that they will not enforce 31 U.S.C. § 3101(b) when reinstated on January 2, 2025. *Id.* Defendants make only a cursory attempt to meet that burden and make no disclaimer of compliance with or enforcement of the Debt Ceiling Statute when the $31.4 trillion in total debt is reinstated. When there is a voluntary cessation, it is in the public interest for the legality of the challenged practice to be settled. *See United States v. W.T. Grant Co.,* 345 U.S. 629, 632 (1953) ("Both sides agree to the abstract proposition that voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot. … This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion.") (internal citations omitted).

Likewise, this case fits the exception to mootness for cases "capable of repetition, yet evading review." *FEC v. Wis. Right to Life, Inc.,* 551 U.S. 449, 461 (2007). It meets both elements of that exception. As the same controversy has arisen again and again—in 2011, in 2016, and now in 2023—there has been no time for the challenge to be "fully litigated." *Id.* It will also arise again between the same parties, Plaintiff NAGE and Defendants Biden and Yellen, in a matter of months.

For these reasons, it is unnecessary to show a new or different injury from that suffered at the time the case was filed. However, Plaintiff does face a new injury, or threatened injury, that is "certainly impending" when the Debt Ceiling Statute is reinstated on January 2, 2025. Once again, at that time, pursuant to 5 U.S.C. § 8348(g), Defendant Yellen will be required to declare a debt

issuance suspension period for the members of Plaintiff NAGE who are G Fund participants. Again, they will suffer the same monetary loss that existed when this case was filed. Plaintiff has standing to sue on behalf of those members whenever there is *either* "threatened injury" that is "certainly impending" or one at "substantial risk" of taking place. *Susan B Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014). There will be the same need for emergency cash management that existed on June 2, 2023, and the harm to these holders of non-marketable Treasury securities will be direct and inescapable. *Williams v. Lew*, 819 F.3d 466 (D.C. Cir. 2016), is distinguishable because of the immediacy of the loss to G Fund participants when the Debt Ceiling Statute goes back in effect and, on an emergency basis, a debt issuance suspension period will again be declared.

## STATEMENT OF CASE

In the First Amended Complaint (the "F.A.C.") filed on June 20, 2023, Plaintiff asks this Court to declare that 31 USC § 3101(b) is unconstitutional "because Congress gives no direction to the Defendant President as to what action to take upon reinstatement of the debt ceiling when the indebtedness of the United States will be well in excess of the $31.4 trillion limit." F.A.C. ¶ 2. The statute effectively places the government of the United States in bankruptcy without a bankruptcy plan or procedure. Plaintiff seeks a declaratory judgment and injunctive relief prior to the reinstatement of the Debt Ceiling Statute on January 1, 2025 because thousands of its members face the same injury in fact, *i.e.*, losses to their personal savings accounts in the G Fund Thrift Savings Plan. All of the members will face the same certain delay in the timely payment of their wages and salaries as they did at the time this case was filed and just prior to the enactment of the Fiscal Responsibility Act, P.L. 118-5 § 401.

**I.      Plaintiff's members have suffered past injury and will suffer future injury in the form of losses to their G Fund accounts.**

At the time this action was filed, thousands of Plaintiff's members had suffered losses to their personal savings accounts, the so-called G Fund Thrift Savings Plans, set up for voluntary contributions from federal employees and established under 5 U.S.C. § 8438. Defendant Yellen sent a letter to Congress on January 13, 2023, declaring a "debt issuance suspension period" pursuant to 5 U.S.C. § 8438(j), which applied to the G Fund Thrift Savings Plan. By declaring a "debt issuance suspension period," Defendant Yellen held up payments due to Plaintiff's members who held these G Fund accounts. F.A.C. ¶ 23. She ceased to invest their savings into nonmarketable Treasury securities subject to the debt limit of 31 U.S.C. § 3101(b) and stopped paying interest accruing from these investments. F.A.C. ¶ 25. As a result, from January 13, 2023, up to June 3, 2023, when P.L. 118-5 became law and 31 U.S.C. § 3101(b) was temporarily suspended, Plaintiff's members in the G Fund accounts did not receive income from any new investment or reinstatement of, or interest on, their personal savings. Had Congress not acted by passing the Fiscal Responsibility Act on June 3, 2023, that loss would have continued indefinitely. Had the United States run out of cash on June 5, 2023, as anticipated by Defendant Yellen, and a more general default and financial panic ensued, Plaintiff's members participating in these G Fund accounts would have suffered even greater injury. While the Fiscal Responsibility Act has allowed Defendant Yellen to make good on these losses, it remains a fact that by the declaration of a debt issuance suspension period, the United States defaulted on the obligations owed to the Plaintiff's members by prioritizing the payment of obligations to others.

To date, Plaintiff's members have suffered losses in two declared debt issuance suspension periods: first in 2011 and against in 2023 as described in the F.A.C. It is either certain or near certain that under existing law Defendant Yellen will be required to declare another debt issuance

4

suspension period on January 2, 2025. At that time, per P.L. 118-5 § 401(a): "Section 3101(b) of title 31, United States Code, shall not apply for the period beginning on the date of the enactment of this Act and ending on January 1, 2025." On the following day, the limitation in effect under Section 3101(b) will be increased by the nominal or face amount of the obligations of principal and interest outstanding then, minus the face or nominal amounts outstanding as of June 3, 2023. In other words, Section 401(b) has a "hold harmless" clause for obligations for principal and interest incurred from June 3, 2023 to January 1, 2025. That means the United States will be insolvent as of January 1, 2025 by the same face amount that it was insolvent just prior to the enactment of Section 401 of P.L. 118-5 on June 3, 2023.

Section 401 places Defendant Yellen in the urgent position of preserving cash on hand and not increasing further the debt obligations of the United States on or after January 2, 2025. Even if the exact shortfall will be determined by the estimate of the tax receipts projected as of that date, there is a very substantial risk—if not a near certainty—that Defendant Yellen will be required to declare immediately a third "debt issuance suspension period."

At the same time, all of Plaintiff's members will be in the same position they were in on May 31, 2023, when the Secretary of the U.S. Department of Veterans' Affairs, which employs thousands of Plaintiff's members, warned of delays in the timely payment of their paychecks. F.A.C. ¶ 21.

**II.   Defendants Have Violated Articles I and II of the Constitution and the Fourteenth Amendment.**

Plaintiff contends that under existing law, and upon reinstatement of the Debt Ceiling Statue, Congress will have in effect imposed a bankruptcy without a bankruptcy procedure. Congress will do so without providing any direction to Defendants regarding appropriate procedures for managing that bankruptcy process and prioritizing payments, and it will do so despite Article

I of the Constitution conferring no power to impose such a bankruptcy as an alternative to the use of its express powers to tax and borrow. Defendants have not challenged the adequacy of the allegations in the F.A.C. alleging that Defendants' actions violate Articles I and II of the Constitution and the Fourteenth Amendment. Nor have Defendants suggested that the F.A.C. fails to state a cause of action pursuant to Fed. R. Civ. P. 12(b)(6). *See* Order of June 22, 2023 (Dkt. 41) directing "parties to brief standing and other possible grounds for dismissal in the ordinary course."

Plaintiff contends that the Debt Ceiling Statute, though now suspended, is unconstitutional because neither Article I nor the Fourteenth Amendment permit or authorize the United States to default on its obligations. Nor may Congress authorize the President to use, in effect, a line-item veto to cancel spending that Congress has directed. For these and other reasons set out in paragraphs 45 through 57 of the F.A.C., Plaintiff seeks a declaratory judgment that the Debt Ceiling Statute unlawfully limits Defendant Yellen from borrowing as necessary to meet the obligations approved by Congress. The statute leads to a bankruptcy of the government without any bankruptcy procedure, and requires Defendants to take action beyond their authority and in violation of Article I, the Fourteenth Amendment, and the separation of powers set out in the Constitution.

## ARGUMENT

I. **Plaintiff's original challenge meets the exceptions for mootness, both because Defendants have voluntarily ceased the challenged conduct and because the constitutional issue is "capable of repetition, yet evading review."**

   A. **There is only a voluntary cessation of the challenged conduct, which Defendants are free to resume on January 1, 2025.**

At the time this action was filed on May 8, 2023, the United States was on a course to bankruptcy, leading to a general default on government debt or cancellation by the President of spending mandated by Congress. The United States had already defaulted on obligations to Plaintiff's members in the G Fund accounts. On January 13, 2023, Defendant Yellen issued a debt

6

issuance suspension period that lasted from that date through the adoption of P.L. 118-5 on June 3, 2023. As a result of Section 401 of that law, and for a short period, Defendants have ended the debt issuance suspension period and other emergency measures planned to comply with 31 U.S.C. § 3101(b), but they will again be required to declare a debt issuance suspension period when the Debt Ceiling Statute is reinstated on January 2, 2025. At that time, Defendants will also be required to take other measures to avoid default including delay of Plaintiff's members' paychecks, as the United States will have run out of cash or be on the verge of doing so. Defendants have not suggested that they will fail to enforce or comply with the statute on that date.

Defendants do not deny that Plaintiff had standing to bring the case on May 8, 2023, and they cannot plausibly maintain that because of P.L. 118-5 this case is moot. It is well settled that a case is not mooted when a legislative body withdraws a law during a legal challenge but remains free to put that same law back into effect. Courts are not "compelled to leave 'the defendant … free to return to his old ways.'" *City of Mesquite v. Aladdin's Castle,* 455 U.S. 283, 289 n.10 (1982) (quoting *W.T. Grant Co.,* 345 U.S. at 632). In this case, Defendants Yellen and Biden are not only free but *required* to return to their old ways when the Debt Ceiling Statute is reinstated on January 2, 2025, and the United States will either have run out or be on the verge of running out of cash to meet its debt obligations and expenses.

Under these circumstances, Defendants have failed to meet the standard for showing mootness. As the Supreme Court has often declared, voluntary cessation does not moot a legal challenge, unless it is "absolutely clear" that the challenged conduct will not recur. *See West Virginia v. EPA,* 142 S. Ct. 2587, 2607 (2023); *Friends of the Earth v. Laidlaw Environmental Services,* 528 U.S. 167, 189–92 (2000); *Parents Involved,* 551 U.S. at 719. As stated as recently as the last term in *West Virginia v. EPA:*

> It is the doctrine of mootness, not standing, that addresses whether 'an intervening circumstance [has] deprive[d] the plaintiff of a personal stake in the outcome of the lawsuit…' The distinction matters because the Government, not petitioners, bears the burden to establish that a once-live case has become moot. That burden is 'heavy' where, as here, '[t]he only conceivable basis for a finding of mootness in th[e] case is [the respondents'] voluntary conduct….' But 'voluntary cessation does not moot a case' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.

142 S. Ct. at 2607 (internal citations omitted).

Defendants understandably fail even to give lip service to this standard. They do not of course say that it is "absolutely clear" that the same challenged conduct "could not reasonably be expected to recur." Indeed, the same conduct will recur because Congress intended it to recur. P.L 118-5 only suspends and does not raise the ceiling on the outstanding debt earned up to the date of enactment, and, as a result, the same financial crisis will recur again. Instead of meeting the "heavy burden" of showing it is "absolutely clear" there will be no recurrence, Defendants argue that it is Plaintiff's burden to prove there will be no recurrence. Defendants say that Plaintiff offers only a chain of "contingencies" or speculation. Defendants are mistaken. It is not Plaintiff that puts forward "contingencies." Plaintiff takes the law as it is and the effects that necessarily follow. Defendants are the ones conjecturing that by luck or chance, or some good fortune, a highly polarized Congress will relent this time and raise the debt ceiling, despite the fact that it has refused to do up to now. Plaintiff merely points to existing law: there is nothing "contingent" about Section 401 of P.L. 118-5 reinstating a law that will keep Defendant Yellen from borrowing funds and paying the nation's debts. It will go into effect—period. Nor do Defendants suggest that they will fail to carry out the law. It is true that Defendant Biden has expressed a wish on several occasions that he would not have to do so. He has even stated a desire on his own part to challenge the constitutionality of 31 U.S.C. § 3101(b). *See* Remarks by President Biden on the Bipartisan Budget Agreement (May 28, 2023), https://www.whitehouse.gov/briefing-room/speeches-

remarks/2023/05/28/remarks-by-president-biden-on-the-bipartisan-budget-agreement/. But there is no statement from Defendants that they will not enforce or comply with 31 U.S.C. § 3101(b) when it goes back in effect.

Despite the argument Defendants put forward here, they know that a crisis is at hand even now. As has been widely reported, Defendant Biden has set up a crisis management team to deal with the impending default upon reinstatement of the Debt Ceiling Statute on January 2, 2025. *See* Adam Cancryn & Jennifer Haberkorn, *Biden resorts to a classic D.C. punt on the debt ceiling. Progressives aren't pleased,* POLITICO*,* Jul. 31, 2023, https://www.polit-ico.com/news/2023/07/31/biden-new-debt-ceiling-crisis-team-00109088. As Defendant Biden himself has indicated, there is a public interest in having the legality of this law settled once and for all. The doctrine of voluntary cessation, "together with a public interest in having the legality of the practices settled," militates against a finding that this action is moot. *W.T. Grant Co.*, 345 U.S. at 632.

### B. As the original case is capable of repetition while evading review, Plaintiff meets the second exception to mootness.

This case also fits the second exception for disputes capable of repetition yet evading review. *See Wis. Right to Life Inc.,* 551 U.S. at 461; *Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983). As the Court stated in *FEC v. Wis. Right to Life*:

> The exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. (internal quotation omitted).

551 U.S. at 461.

As to the first condition, there will be *certain* repetition, in just months, with no chance of this issue being "fully litigated" before catastrophe occurs or the legality of the practice settled. The second condition— a case "capable of repetition" between the same parties—is also met. On

9

January 2, 2025, Defendant Yellen is certain to issue another debt issuance suspension period for the G Fund participants under 5 U.S.C. § 8438(g), as the need for emergency cash management will be even greater than it was for the last one on January 13, 2023.

There will be no chance for full litigation of this dispute once that act occurs. If there is any time at all, it will be at most a matter of weeks until Congress pulls back from the brink or the bankruptcy occurs, with no possibility of full appellate review to determine the legality of a practice that would ruin the credit of the United States and harm Plaintiff's members.

As the Supreme Court stated in *FEC v. Wis. Right to Life*: "Our cases find the same controversy sufficiently likely to recur when a party has a reasonable expectation that it 'will again be subjected to the alleged illegality." 551 U.S. at 461 (quoting *Lyons*, 461 U.S. at 109). That is evident here. Twice already, in 2011 and again in 2023, to avoid bankruptcy, Defendant Yellen declared a debt issuance suspension period for G Fund participants under 5 U.S.C. § 8438 (g). At least in 2011, Congress raised the ceiling on indebtedness and ended the crisis, but, ominously, this time the same ceiling of $31.4 trillion remains in place. The United States will be on the verge of financial catastrophe on January 2, 2025. Plaintiff is entitled to resolve the inviolability of the individual savings of its members in a case that allows for full appellate review. For that reason, Plaintiff meets the second exception to a finding of mootness.

II. **Apart from meeting the two exceptions to mootness, this case continues to be a live controversy because of the threatened future injury on January 2, 2025.**

As noted above, Defendants do not contest the standing of Plaintiff when this action was filed on May 8, 2023. However, Defendants do deny—as a second ground for their motion to dismiss under Rule 12(b)(1)—that Plaintiff is suffering any new or additional injury currently or in the period since 31 U.S.C. § 3101(b) was suspended. But under the timetable of P.L. 118-5, future injury is "certainly impending." As the Supreme Court has stated, "[a]n allegation of future

10

injury may suffice if the threatened injury is 'certainly impending,' *or* there is a 'substantial risk' that the harm will occur.'" *Susan B. Anthony List,* 573 U.S. at 158 (quoting *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013)) (emphasis supplied). As noted by this Circuit, the Court's standard is "disjunctive." *Reddy v. Foster,* 845 F.3d 493, 500 (1st Cir. 2017).

For all of the reasons set forth above, future injury is either "certainly impending" or there is a "substantial risk" of it on January 2, 2025, when by law the Debt Ceiling Statute will go back into effect. By operation of law, there will be an urgent need for the same emergency cash management that led Defendant Yellen to declare a debt issuance suspension period under 5 U.S.C. § 8438(g). There will be the same default on timely payments to G Fund participants upon the government debt they hold. There will be the same imminent risk of bankruptcy and at least the delay in the timely payment of wages and salaries of all of the Plaintiff's members.

The substantial risk of such future injury distinguishes this case from *Williams v. Lew,* 819 F.3d 466 (D.C. Cir. 2016). In that case, the D.C. Circuit found such future injury to the plaintiff, a private investor who bought and sold securities, to be unlikely due to an "extended chain" of contingencies:

> any future injury that Williams might suffer follows from an extended chain of continencies. In particular: (1) federal debt must reach the statutory ceiling; (2) the Treasury Department must exhaust any "extraordinary measures" to avoid a default; (3) the United States must be unable to pay its obligations with "cash on hand" in a given day; (4) payment on Williams's securities must come due *during such time;* and (5) Williams *must continue to hold such securities*.

*Williams,* 819 F.3d at 472 (emphasis supplied).

All five of those contingencies are absent in this case: (1) the federal debt is already over the statutory ceiling; (2) on January 2, 2025, Defendant Yellen will invoke "extraordinary measures," as the Court noted, but will do so by declaring a debt issuance suspension period that inflicts direct injury on the G Fund participants; (3) as of January 2, 2025, when the Debt Ceiling

11

Statute goes back into effect, or shortly thereafter, the United States will be unable to pay its obligations with "cash on hand"; (4) the payment on government debt will immediately become due to some or all of the G Fund participants; and (5) Plaintiff's members will be holding these obligations when they become due because these securities are nonmarketable, and participants are unable to sell them. In effect, the Court in *Williams* held that injury to that plaintiff was contingent because the injury to the G Fund participants would occur first.

In further distinction with *Williams,* Plaintiff in this case has brought a separation-of-powers claim. In *Williams,* the Court took special note that Williams had made "only a fleeting reference" to his separation-of-powers argument and that his failure to develop *that* argument had "forfeited" that claim. *See Willaims*, 819 F.3d at 471. The Court's preliminary finding of a waiver of the separation-of-powers claim was necessary because standing to bring such a claim is more readily available. As the Supreme Court has often held, "whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge." *Collins v. Yellen,* 141 S. Ct 1761, 1780 (2021). Nor does a party bringing such a claim have to wait for the injury to occur. The Court made that point recently in a case challenging the bar to removal of the head of the new consumer protection agency:

> [W]e have expressly 'reject[ed]' the 'argument that consideration of the effect of a removal provision is not 'ripe' until that provision is actually used,' because *when such a provision violates the separation of powers it inflicts a 'here-and-now' injury* on affected third parties that can be remedied by a court (emphasis supplied).

*Seila Law, LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2196 (2020) (quoting *Bowsher v. Synar,* 478 U.S. 714, 727 n.5 (1986); *INS v. Chadha,* 462 U.S. 919, 935–36 (1983)). Any violation of the separation-of-powers infringes on a liberty interest because the separation of powers in Articles I and II was "designed to preserve the liberty of all the people." *Collins,* 141 S. Ct. at

1780. Finding a waiver of the separation-of-powers argument, the Court in *Williams* did not have to use this more lenient framework for standing.

Plaintiff meets the standard of "certainly impending" future injury or "substantial risk" of it. The injury will occur by operation of law, or the application of the same effective limit on further borrowing necessary to meet a given level of indebtedness. No intervening act by a third party is necessary for this injury to take place on January 2, 2025, and it is neither relevant to nor part of the judicial function to consider future changes in existing law.

## CONCLUSION

For all of the reasons set forth above, Defendants' Motion to Dismiss should be denied.

Dated: August 7, 2023        Respectfully submitted,

NATIONAL ASSOCIATION OF
GOVERNMENT EMPLOYEES, INC.,

By its attorneys,

*/s/ Shannon Liss-Riordan*
Shannon Liss-Riordan, BBO #640716
Matthew P. Carrieri BBO #705192
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com
mcarrieri@llrlaw.com

Sarah E. Suszczyk *(pro hac vice)*
General Counsel NAGE/IBPO/IAEP/IBCO
159 Burgin Parkway
Quincy, Massachusetts 02169
(617) 376-7239
ssuszczyk@nage.org

Thomas H. Geoghegan *(pro hac vice)*
Despres, Schwartz & Geoghegan, Ltd.
77 West Washington Street, Suite 711

        Chicago, Illinois 60602
        (312) 372-2511
        tgeoghegan@dsgchicago.com

        Patrick V. Dahlstrom *(pro hac vice)*
        Pomerantz LLP
        10 South LaSalle Street, Suite 3505
        Chicago, Illinois 60603
        (312) 377-1181
        pdahlstrom@pomlaw.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that a copy of this document was served by electronic filing on August 7, 2023 on counsel for Defendants.

        */s/ Shannon Liss-Riordan*
        Shannon Liss-Riordan