UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NATIONAL ASSOCIATION OF
GOVERNMENT EMPLOYEES,

       *Plaintiff,*

  v.

JANET YELLEN, Secretary of the Treasury,
and JOSEPH R. BIDEN, JR., President of the
United States,

       *Defendants.*

Civil Action No: 1:23-cv-11001-RGS

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS FOR LACK OF JURISDICTION**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i
INTRODUCTION .......................................................................................................................... 1
ARGUMENT .................................................................................................................................. 2
I.     NO EXCEPTION TO THE MOOTNESS DOCTRINE APPLIES ............................ 2
II.    PLAINTIFF HAS NOT ALLEGED A CONCRETE INJURY FOR STANDING PURPOSES UNDER ANY PLAUSIBLE THEORY ............................. 5
CONCLUSION ............................................................................................................................... 7

**INTRODUCTION**

Apparently discontented with a bipartisan political resolution that suspended the Debt Limit, Plaintiff National Association of Government Employees ("NAGE" or "Plaintiff") asks this court to rule on weighty constitutional questions in a moot case, based on a highly speculative theory of injury at odds with the relevant facts and with governing precedent. In pressing this Court to extend its jurisdiction beyond what Article III permits, Plaintiff's opposition brief, *see* ECF No. 47 ("Opp.") raises two unpersuasive arguments which warrant a brief response.

*First*, Plaintiff argues that this case is not moot because the Defendants "voluntarily" suspended the debt limit, but Plaintiff does not allege—nor could it—that Defendants did so to moot this case, and "[t]he voluntary cessation doctrine does not apply when the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation." *ACLU of Massachusetts v. U.S. Conf. of Cath. Bishops*, 705 F.3d 44, 55 (1st Cir. 2013). Nor does this case fit within the exception for cases "capable of repetition, yet evading review," because, as the multiple court decisions addressing the Debt Limit have shown, the Debt Limit Statute does not "systematically evade review" such that "the exception [might] apply." *Ramirez v. Sanchez Ramos*, 438 F.3d 92, 101 (1st Cir. 2006).

*Second*, NAGE seeks to move the goalposts on its own theory of injury in an effort to sustain a live case or controversy. In this recasting, Plaintiff now says its members suffered a past injury during the debt issuance suspension period, when there was a temporary suspension of investments in the G Fund, and expects to suffer that same "injury" if Secretary Yellen declares a debt issuance suspension period in January of 2025. But Plaintiff concedes that a federal statute requires that the Secretary of the Treasury make participants in the G Fund whole upon expiration of the debt issuance suspension period, *see* 5 U.S.C. § 8438 (g)(1)-(4), which Plaintiff concedes occurred during the last suspension. *See* Opp. at 4 (noting that the "Fiscal Responsibility Act has allowed Defendant Yellen to make good on these losses"). Because such restoration is guaranteed independent of whether Plaintiff

1

wins or loses this lawsuit, it lacks standing to sue on this basis. *See Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1622 (2020). Finally, Plaintiff's argument that in *2025* Congress will, for the first time in the nation's history, fail to raise or suspend the debt limit, is rank speculation and insufficient to constitute injury that is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013). The Court should dismiss this case.

## ARGUMENT

### I. NO EXCEPTION TO THE MOOTNESS DOCTRINE APPLIES

"The doctrine of mootness enforces the mandate 'that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed.' "*ACLU of Mass.*, 705 F.3d at 52 (quoting *Mangual v. Rotger–Sabat,* 317 F.3d 45, 60 (1st Cir. 2003)). Here, though Plaintiff argues (Opp. at 1) that Defendants "do not challenge" the "standing of Plaintiff . . . at the time this lawsuit was filed on May 8, 2023"—and Defendants concede no such thing, *see infra* Part II; MTD, ECF No. 45 at 7-10—NAGE's standing in May of 2023 is now only an academic curiosity. This case has been overtaken by events, namely, a bipartisan solution negotiated between the political branches to suspend the Debt Limit until January of 2025, *see* Pub. L. 118-5 § 401(a). This agreement, aside from reinforcing the speculative nature of Plaintiff's alleged injuries at the time the original action was brought (given that none of the harms NAGE alleged came to pass), moots this case. *See Mangual*, 317 F.3d at 60 ("[i]f events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case").

Plaintiff raises two arguments to rescue its claim from dismissal on mootness grounds, both of which lack merit. *First*, Plaintiff invokes the "voluntary cessation" doctrine, *see* Opp. at 1, 7-9, which "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n. 1 (2001). *See also Already, LLC v. Nike, Inc.,* 568 U.S. 85, 91 (2013) ("a defendant

2

cannot automatically moot a case simply by ending its unlawful conduct once sued."); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (applying doctrine where "[t]he only conceivable basis for a finding of mootness in this case is [the defendant's] voluntary conduct.")

But under First Circuit precedent, that doctrine is inapplicable where the relevant intervening event—here the suspension of the Debt Limit Statute—was not brought about in order to moot this case (or any other case). *See ACLU of Mass.,* 705 F.3d at 55 ("The voluntary cessation doctrine does not apply when the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation.") (quoting M. Redish, *Moore's Fed. Practice,* § 101.99[2]); *Calvary Chapel of Bangor v. Mills*, 52 F.4th 40, 47 (1st Cir. 2022) (same); *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 10 (1st Cir. 2021) (same); *see also Town of Portsmouth, R.I. v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016) (finding that "there is no basis upon which to conclude that the state legislature repealed the tolls in order to make the present litigation moot" because, *inter alia*, "we presume that a state legislature enacts laws in good faith, not with the improper motive of mooting pending litigation") (cleaned up)). Instead, the Debt Limit was suspended through bipartisan legislation passed by Congress and signed by the President, following discussions between the Executive and Legislative branches regarding a suspension of the Debt Limit. While President Biden certainly signed the legislation into law, the notion that the President's animating impulse behind signing this legislation was to moot a federal district court case, instead of to suspend the debt limit for other weighty and well-known economic and policy reasons, is fanciful.

*Second*, Plaintiff invokes the mootness exception for cases "capable of repetition, yet evading review." Opp. at 2, 9-10. "The party who asserts continuing jurisdiction (here, the plaintiff) bears the burden of establishing both that the issue is capable of repetition and that, absent relaxation of the classic mootness rule, it will evade review." *Ramirez v. Sanchez Ramos*, 438 F.3d 92, 100 (1st Cir. 2006). That "narrow" exception to mootness, *Cruz v. Farquharson,* 252 F.3d 530, 534 (1st Cir. 2001), "applies only in exceptional situations." *City of Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983); *see also Oakville Dev.*

*Corp. v. F.D.I.C.,* 986 F.2d 611, 615 (1st Cir. 1993) (noting that "the exception is not a juju, capable of dispelling mootness by mere invocation."). To satisfy the exception, the Plaintiff must prove two elements: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

With respect to the first element, Plaintiff protests that "the same controversy has arisen again and again—in 2011, in 2016, and now in 2023" without an opportunity to litigate the issues in NAGE's complaint. Opp. at 2. As an initial matter, the fact that Congress has never failed to raise or suspend the Debt Limit—and that each time the political branches have acted to avoid a default—only reinforces the hypothetical nature of Plaintiff's alleged injuries here. But in any event, if Plaintiff's allegations about suffering harm from a debt issuance suspension period (and the *temporary* suspension of investments in the G fund) under 5 U.S.C. § 8438(g) were well taken, they had months to litigate that issue, or to bring a constitutional challenge to 5 U.S.C. § 8438, which they have not done.

Moreover, multiple challenges have been brought to the Debt Limit statute, both in 2013 and in 2023—in addition to the present lawsuit. *See Williams v. Lew*, 77 F. Supp. 3d 129 (D.D.C. 2015) (*Williams I*), *affirmed in Williams v. Lew*, 19 F.3d 466 (D.C. Cir. 2016) (*Williams II*); *Weisberg v. Yellen*, 3:23-cv-00549-OAW (D. Conn.) (Complaint filed May 1, 2023; Government's Motion to Dismiss Pending).[1] As the First Circuit has noted, "the issue itself must systematically evade review in order for the exception to apply." *Sanchez Ramos*, 438 F.3d at 101; *see also Spencer v. Kemna,* 523 U.S. 1, 18

---

[1] Though some of these cases were decided on standing grounds, the plaintiffs were able to have their complaints heard in federal court (or are currently in the process of doing so), and a plaintiff is not entitled to a merits determination in a case when it lacks standing itself, just because other plaintiffs have also been found to lack standing in related challenges to the same law. *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 489 (1982) ("[t]he assumption that if [plaintiffs] have no standing to sue, no one would have standing, is not a reason to find standing.")

(1998) (finding that due process challenge to parole revocation hearing did not qualify for the exception, even though the plaintiff's sentence expired before he could litigate his constitutional challenge, because the time between parole hearings and the expiration of criminal sentences is not always—or even typically—so short as to evade review); *Horizon Bank & Trust Co. v. Massachusetts,* 391 F.3d 48, 54 (1st Cir. 2004) (holding that claims evade review only when "the underlying facts are inherently temporary such that they will predictably have changed and foreclosed meaningful relief by the time the case has worked its way through the legal system"); *Gulf of Maine Fishermen's Alliance v. Daley*, 292 F.3d 84, 89 (1st Cir. 2002) (plaintiff failed to show that fishing regulations, though effective for only one year, could not be fully litigated within that time frame). Given the prior litigation surrounding the debt limit, Plaintiff fails to show that the Debt Limit Statute "systematically evade[s] review." *Sanchez Ramos*, 438 F.3d at 101.

Nor can Plaintiff show a "reasonable expectation that the same complaining party [will] be subject to the same action again," *Spencer*, 523 U.S. at 17, because Plaintiff's allegation that the Government will default on its obligations and that Congress will fail to raise the Debt Limit in 2025 is inherently speculative. *See Harris v. Univ. of Massachusetts Lowell*, 43 F.4th 187, 194-95 (1st Cir. 2022) (noting that "avoiding mootness cannot merely rest on an alleged harm that is theoretically 'not impossible' of repetition" and that "avoiding mootness, like establishing standing, requires an 'actual or imminent' and 'concrete and particularized,' redressable injury.") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Additionally, it is equally speculative that Secretary Yellen will declare a debt issuance suspension period, and Plaintiff's alleged injury from the temporary suspension of investments in the G Fund fails for standing purposes in any event, *see infra* at 6-7.

## II.   PLAINTIFF HAS NOT ALLEGED A CONCRETE INJURY FOR STANDING PURPOSES UNDER ANY PLAUSIBLE THEORY

With respect to standing, Plaintiff's argument that "under the timetable P.L. 11-8, future injury is certainly impending," Opp. at 10, is without merit. In the declaratory judgment context, the Plaintiff

must "show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser v. Newkirk,* 422 U.S. 395, 402 (1975). Plaintiff cannot do so.

Per Plaintiff, 2025 presents "the same imminent risk" of "the delay in the timely payment of wages and salaries of all of Plaintiff's members, Opp. at 11, that occurred when it filed suit in May of 2023. Of course, there was no default and there was no delay in the payment of wages and salaries to its members in 2023 (considering the bipartisan agreement to suspend the debt limit), so citing the "same imminent risk" in 2025 does nothing for Plaintiff's claims. Any such argument that, in 2025, Congress will—for the first time—fail to raise or suspend the Debt Limit, therefore remains speculative. *See generally Clapper*, 568 U.S. at 401 ("'allegations of *possible* future injury' are not sufficient" to confer standing). Plaintiff offers no persuasive counterargument to any of these well-established standing principles, including precedent dealing with litigation surrounding the Debt Limit itself. *See Williams v. Lew*, 19 F.3d 466 (D.C. Cir. 2016) (*Williams II*).

Plaintiff's reliance on the temporary suspension of investments in the G Fund does not suffice for standing purposes either because those investments are required by statute to be made upon the expiration of the debt issuance suspension period and thus, a favorable ruling for Plaintiff would not change their members' financial position. *See* MTD at 9-10 (describing statutory framework). Plaintiff fails to address Defendants' arguments based on *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615 (2020), where the Supreme Court held that beneficiaries to an ERISA defined-benefit plan lacked standing to sue over alleged plan mismanagement because "[t]hey have received all of their vested pension benefits so far, and they are legally entitled to receive the same monthly payments for the rest of their lives" and "[w]inning or losing this suit would not change the plaintiffs' monthly pension benefits." *Id.* at 1622; *see generally* MTD at 9-10. Here, Plaintiff acknowledges that the G fund was made whole following the latest debt issuance suspension period, as required by the relevant statutory framework.

6

*See* Opp. at 4. The prospect of a *future* debt issuance suspension period, whether in 2025 or another time, is speculative in any event, and is no more an Article III injury than the temporary pause that occurred in 2023.

## CONCLUSION

For the reasons discussed above and those discussed in Defendants' opening memorandum, this Court lacks subject matter jurisdiction over Plaintiff's claims and should dismiss accordingly.

Dated: August 22, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

BRAD P. ROSENBERG
Special Counsel

DIANE KELLEHER
Assistant Branch Director

/s/ *Alexander N. Ely*
ALEXANDER N. ELY
ZACHARY AVALLONE
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Washington, DC 20005
Tel: (202) 993-5177; Fax: (202) 616-8470
Alexander.N.Ely@usdoj.gov
Zachary.A.Avallone@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served by electronic filing on August 22, 2023, on counsel of record for Plaintiff.

/s/ *Alexander N. Ely*
Alexander N. Ely

*Counsel for Defendants*
