UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 23-11001-RGS

NATIONAL ASSOCIATION OF
GOVERNMENT EMPLOYEES, INC.

v.

JANET YELLEN, in her official capacity
as Secretary of Treasury, and
JOSEPH BIDEN, in his official capacity
as President of the United States

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS

October 18, 2023

STEARNS, D.J.

Plaintiff National Association of Government Employees, Inc. (NAGE) filed this action against defendants Janet Yellen, in her official capacity as Secretary of Treasury, and Joseph Biden, in his official capacity as President of the United States. It seeks a judgment on behalf of its members declaring that the Debt Ceiling Statute, 31 U.S.C. § 3101(b), is "unconstitutional and in violation of the separation of powers set out in Articles I and II of the United States Constitution."[1]  Am. Compl. [Dkt # 40] ¶ 1.  Defendants move to

---

[1] Because the Amended Complaint asserts only that the statute violates "the separation of powers set out in Articles I and II of the United States Constitution," Am. Compl. ¶ 1, any other theory of unconstitutionality

dismiss the case on standing and mootness grounds. For the following reasons, the court will allow defendants' motion.

## DISCUSSION

One of the "core component[s]" of the Article III case or controversy requirement is that a plaintiff have standing to pursue its claims. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). As an association, NAGE's standing hinges on the standing of its members. *See Parent/Pro. Advoc. League v. City of Springfield*, 934 F.3d 13, 33 (1st Cir. 2019). Three elements are relevant to the inquiry of whether its members have standing:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-561 (internal quotation marks, alterations, and citations omitted).

---

referenced by NAGE in its briefing or during the October 5, 2023 hearing (for example, violation of the Fourteenth Amendment) is not properly before the court.

The only plausible basis for standing alleged here is the threat existing at the time of filing that the payment of NAGE members' salaries and wages would be delayed.[2] The problem is this: Even assuming *arguendo* that this injury sufficed to establish standing at the time of filing (the court expresses no opinion on this question), the underlying issue can no longer be considered "real" or "immediate" given passage of the Fiscal Responsibility

---

[2] NAGE proposes three other bases for standing: (1) past losses to Thrift Savings Plan G Fund (government securities) accounts; (2) future losses to those accounts; and (3) future delayed salaries and wages. None satisfies the injury-in-fact requirement.

With respect to the first basis, it is not clear that NAGE members suffered any "actual" loss. NAGE concedes in its oppositional briefing that "the Fiscal Responsibility Act has allowed Defendant Yellen to make good on" any losses to G Fund accounts that may have existed at their time of filing. Opp'n to Mot. to Dismiss (Opp'n) [Dkt # 47] at 4. Even assuming members did suffer an actual loss, however, that loss would not be redressable by a favorable decision from this court, as this action seeks only declaratory relief.

With respect to the second and third bases, it is entirely conjectural to say that a constitutional violation will crystallize (and thus that the predicted harm will occur) on January 2, 2025. To find this injury sufficient to confer jurisdiction, the court would have to speculate that another entity not party to this suit – Congress – will, fourteen months from now, both pass a budget for 2025 that causes government debt to exceed the Debt Ceiling Statute and fail to further suspend enforcement of or raise the debt ceiling (despite having always undertaken such action in the past). *See Williams v. Lew*, 819 F.3d 466, 474 (D.C. Cir. 2016); *cf. Steir v. Girl Scouts of the USA*, 383 F.3d 7, 16 (1st Cir. 2004) ("It is not enough for a plaintiff to assert that she 'could be' subjected in the future to the effects of an unlawful policy or illegal conduct by a defendant—the prospect of harm must have an 'immediacy and reality.'"), quoting *Golden v. Zwickler*, 394 U.S. 103, 109 (1969).

3

Act of 2023, which suspended enforcement of the Debt Ceiling Statute through January 2, 2025. *Town of Portsmouth v. Lewis*, 813 F.3d 54, 58 (1st Cir. 2016), quoting *Am. C.L. Union of Massachusetts v. U.S. Conference of Catholic Bishop*, 705 F.3d 44, 52 (1st Cir. 2013). Any declaratory judgment action premised on this injury accordingly is moot. *See Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 9 (1st Cir. 2021); *see also Harris v. Univ. of Massachusetts Lowell*, 43 F.4th 187, 191 (1st Cir. 2022) ("[A] suit becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.") (internal quotation marks, alterations, and citations omitted).

NAGE does not dispute that the Fiscal Responsibility Act of 2023 removed any imminent risk of harm which may have existed at the time of filing, but it seeks to avoid application of the mootness doctrine by citing two exceptions to it: voluntary cessation and the potential for the harm to recur and yet evade review. Neither exception provides relief here.

## I.  Voluntary Cessation

NAGE first invokes the voluntary cessation exception, which provides "that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).

4

Defendants do not engage with the merits of whether they can fairly be said to have "voluntarily ceased" the challenged conduct, *cf. Lewis*, 813 F.3d at 59 n.1, instead arguing that the doctrine is inapplicable because "the relevant intervening event" – suspension of the Debt Ceiling Statute – "was not brought about" to moot litigation, Reply [Dkt #52] at 3.

On balance, the court agrees with defendants that the doctrine should not govern here. *See Bos. Bit Labs*, 11 F.4th at 10 (the party asserting mootness bears the burden to show that the doctrine does not apply). As the First Circuit has explained, the underlying purpose of the voluntary cessation exception "is to deter a 'manipulative litigant [from] immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after.'" *Lewis*, 813 F.3d at 59, quoting *Am. C.L. Union*, 705 F.3d at 54-55. The exception serves little purpose where, as here, "the voluntary cessation occurred for reasons unrelated to the litigation." *Lewis*, 813 F.3d at 59.

Recognizing the writing on the wall, NAGE cites to *West Virginia v. Environmental Protection Agency*, 142 S. Ct. 2587 (2022), which it contends applied the voluntary cessation exception despite the government having not acted to moot the litigation. But the court is not convinced that NAGE correctly interprets *West Virginia*. The relevant conduct in that case was the

5

agency's statement that it "ha[d] no intention of enforcing the" current rule prior to adoption of a new rule. *Id.* at 2607. Because the agency did not propose any alteration of the overarching legal landscape, that statement had no other purpose than mooting the current litigation.

## II.  Capable of Repetition Yet Evading Review

NAGE alternatively suggests that the alleged harm falls within the exception for review-evading repetition. It has not, however, met its burden to show that either element of the exception – (1) that the challenged conduct "was in its duration too short to be fully litigated prior to its cessation or expiration" or (2) that "there was a reasonable expectation that the same complaining party would be subjected to the same action again"– is met here. *Am. C.L. Union*, 705 F.3d at 57, quoting *Gulf of Maine Fisherman's All. v. Daley*, 292 F.3d 84, 89 (1st Cir. 2002); *see also Harris*, 43 F.4th at 194 (the party opposing mootness bears the burden to show that the doctrine applies).

First, NAGE fails to explain how the challenged conduct is so "inherently transitory" as to escape judicial review. *Am. C.L. Union*, 705 F.3d at 57. At best, it states that "it will be at most a matter of weeks until Congress pulls back from the brink or the bankruptcy occurs, with no possibility of full appellate review to determine the legality of a practice that would ruin the

6

credit of the United States and harm Plaintiff's members." Opp'n at 10. But this is pure speculation. NAGE offers no reasonable basis to assume that, if Congress were to take the unprecedented step of allowing an alleged constitutional violation to materialize, it would then resolve the issue within weeks. *See Cruz v. Farquharson*, 252 F.3d 530, 535 (1st Cir. 2001) (exception not met where plaintiffs failed to provide any evidence, apart from their own say-so, that the issues could evade meaningful review).

Second, NAGE fails to make the requisite showing of repetition. While it is true that the *threat* of harm has recurred at times, NAGE offers no reasonable basis to expect that it will be subject to the "*alleged illegality*" in the future. *See Am. C.L. Union*, 705 F.3d at 57 (emphasis in original), quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). Congress has consistently suspended enforcement of or raised the amount of the debt ceiling limit before any separation of powers violation has crystallized when faced with the issue in the past.

## ORDER

For the foregoing reasons, the motion to dismiss is <u>ALLOWED</u>.

SO ORDERED.

/s/ Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE